HERBERT W. ROSS, PLAINTIFF, v. THE DIRECTOR GENERAL OF RAILROADS, DEFENDANT.

Submitted March 19, 1920—Decided June 8, 1920.

1. While it is true that, as a general proposition, the mere fact that the witnesses on the one side outnumber those called by the other, will not justify the court in declaring that a finding of the jury based upon the testimony of the lesser number is against the weight of the evidence, this general principle has no application where the only witnesses who testify on the one side are parties to the litigation, and those on the other not only greatly outnumber them, but are also totally disinterested.

2. The duty of a railroad company to use extra precaution at extraordinarily dangerous crossings arises when the peculiarly dangerous feature is a consequence of the acts of the company itself in constructing its road or buildings.

---

On defendant's rule to show cause. On plaintiff's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the plaintiff, *Robert Newton Crane.*

For the defendant, *Conover English.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The purpose of the present litigation is to secure compensation for personal injuries received by the plaintiff in a collision between an automobile in which he was riding and a train operated by the defendant. The accident occurred at the point where the railroad of the Lehigh Valley Railroad Company crosses a public road, in the county of Union, called Rahway avenue. The highway is what is known in common parlance as a country road. The accident occurred in August, 1918, in broad daylight. The day was bright and clear. The liability of the defendant is averred in the declaration to rest upon two distinct and unconnected acts of negligence—(1) that the defendant failed to give the statutory warning signals of the approach of the train to the crossing, and (2), that he permitted brush and shrubbery to grow upon the roadway in such profusion as to obstruct and prevent a view of the railroad tracks, and of approaching trains, thereby rendering the crossing extra-hazardous to travelers on the highway; that for this reason the law imposed upon him the duty of employing extra precautions for their protection beside the giving of the statutory signals; and that he negligently failed in the performance of this duty.

The trial of the case resulted in a verdict in favor of the plaintiff, the jury assessing his damages at $700. By their finding they, of course, declared that under the proofs submitted the defendant had been guilty of one or the other of the negligent acts charged in the complaint. The defendant under his rule now argues that this finding was without legal justification. The contention of the plaintiff under the rule allowed to him is that the award is manifestly inadequate.

The first contention argued on the defendant's rule is that the finding of the jury that the statutory signals were not given (if the verdict is rested upon such a finding), is con-

trary to the great preponderance of the evidence. The automobile in which the plaintiff was riding was being driven by a Mr. Ashmead. A Mrs. Allen and a Miss Johns were in the party. As the result of the accident Mrs. Allen and Miss Johns lost their lives; the two men were more or less injured, and the automobile was wrecked. Ashmead, as well as Ross, brought suit against the company to recover compensation for his personal injuries and the destruction of his car; and the administratrix of Mrs. Allen brought suit against the same defendant for the pecuniary loss sustained by the next of kin of the decedent. The three cases were tried together. With this explanation of the situation, I turn to a consideration of the testimony itself.

The only testimony tending to show that neither a bell was rung nor a whistle blown was that of Mr. Ashmead and of the plaintiff. They both swore that neither of those signals was given, although the plaintiff qualified his testimony afterward by saying that he did not hear either one of them, and he thought he would have heard if they had been sounded. It is to be observed that each of these witnesses was vitally interested in the result of these trials, for their right of recovery depended largely upon their being able to convince the jury of the failure of the defendant in the performance of this duty. On the other hand, the engineer of the train testified that the bell worked automatically; that he started it ringing more than three thousand feet east of the crossing, and that it continued to ring until after the accident. He also testified that he blew the whistle, giving the regular road crossing signal, at the whistling post, which was more than nine hundred feet from the Rahway avenue crossing; and that he blew it again just before the collision occurred, when he saw the automobile in which the plaintiff was riding approaching near to the track. He is corroborated on both points by the fireman on the engine who testified that he heard the bell when it began to ring, and he also heard the whistle signals. A gate tender at the Pickton avenue crossing, which was about three thousand feet east of the place of the accident, testified that he heard the whistle blow for the Rahway avenue cross-

ing, and that it blew in the neighborhood of the whistle post which was visible to him from where he stood. A track walker, who was about a thousand feet west of the place of the accident, and who saw it, also corroborated the engineman's testimony as to the blowing of the whistle. All of these witnesses except the engineman—and, possibly, the fireman—would seem to have been disinterested, unless the mere fact of their employment by the defendant justifies the opposite conclusion. We do not think it does. They had no personal interest in the result of the trial, and they were not in any way responsible for the happening of the accident. To declare that men in this situation are likely to commit perjury can only be explained on the theory that the person so declaring is prejudiced against the whole class of railroad employes, *quia* their employment. But, in addition to this proof, six witnesses were called by the defendant, none of whom had any relation with him, or with the company whose railroad he was operating, and all of whom resided in the neighborhood of the accident. Each one of them testified that he heard the whistle blown, apparently as a signal for the road crossing at Rahway avenue, and that he heard it blown almost immediately before the collision occurred. While it is true that, as a general proposition, the mere fact that the witnesses on the one side outnumber those called by the other, will not justify the court in declaring that a finding of the jury based upon the testimony of the lesser number is against the weight of the evidence, this general principle has no application to a case like the present, where the only witnesses who testify on the one side are parties to the litigation, and those on the other not only greatly outnumber them, but are most of them also, so far as the case shows, totally disinterested.

It follows from what has been said that this verdict, so far as it rests upon the alleged failure to blow a whistle or ring a bell, cannot stand.

Taking up the second matter presented by the defendant's rule—that is, the question whether this crossing was peculiarly hazardous, and that because of that fact the defendant

was charged with the duty of taking extra precautions for the protection of travelers along the highway.

The proofs bearing upon this point are as follows: Rahway avenue is a country road, the surface of which is rather rough. As a traveler along it approaches the railroad his view of the track and of trains running thereon is greatly interfered with by the presence along each side of the highway of bushes that have been permitted to grow there. They run out, however, at a point about fifty feet from the crossing—that is, they do not extend beyond the point indicated. There were also at the time of the accident bushes growing alongside the right of way fence of the railroad company, and parallel therewith, and those bushes were said to further interfere with the vision of a traveler along the highway; but they were not upon the railroad property, being outside of the fence, and the fence being along the exterior line of the right of way, as the proofs indicated. Upon these three factors, namely, roughness of the surface of the highway, the presence of bushes along the sides thereof, and of bushes running parallel with the right of way, is rested the averment that the crossing is extra-hazardous.

The contention seems to us to be entirely without justification. As was said by the Court of Errors and Appeals in *Danskin* v. *Pennsylvania Railroad Co., 76 N. J. L.* 660: "There is nothing in the mere fact of the existence of brush or woods that renders a crossing so peculiarly dangerous that prudent persons cannot use the public road in safety." And this is emphatically so where the brush or woods terminate at a point at least fifty feet from the crossing, and so afford no obstruction to vision after the fifty-foot point is passed. Of course, the fact that the surface of the highway is in a rough condition affords no justification for the assertion that because of this fact the crossing is extra-hazardous. The finding of the jury, therefore (if it so found), that this crossing was so dangerous that the statutory signals would not afford adequate protection to a prudent person intending to cross over the railroad tracks is entirely without justification. But even if the facts were otherwise, the averment that because

thereof the defendant was under an obligation to use extra precautions for the protection of the public is without legal support. In the leading case of *Pennsylvania Railroad Co.* v. *Matthews,* 36 *Id.* 531, Chief Justice Beasley, writing for the Court of Errors and Appeals, declares the rule to be that "when the company has created extra danger it is bound to use extra precautions." And, Mr. Justice Reed, writing for the same court in the case of *New York, &c., Railroad Co.* v. *Leaman,* 54 *Id.* 202, referring to the duty of the railroad company to use extra precautions at extraordinarily dangerous crossings, says: "But this duty only arises when this peculiarly dangerous feature is a consequence of the acts of the company itself in constructing its road or buildings." Mr. Justice Garrison, in *Kyle, Administratrix,* v. *Lehigh Valley Railroad Co.,* 81 *Id.* 186, speaking of this same duty, says that the legislative scheme which limits the obligation of a railroad company to protect travelers on the highway to the blowing of a whistle or the ringing of a bell, "does not purport to cover those cases in which the railroad company has created extraordinary dangers that increase the risk to the public beyond the point where prudent persons, if warned by audible signals, can use the public roads in safety. Hence, a railroad company that brings about such a situation imposes upon itself the common law duty of using reasonable care to protect the public from the dangers peculiar to such situation." *Danskin* v. *Pennsylvania Railroad Co., supra,* is to the same effect. The underlying fact upon which the additional duty rests is that the railroad company itself, by its own act, has created the condition which makes the crossing extrahazardous. In the present case there is not even a suggestion that the defendant himself, or the railroad company whose road he was operating, created any one of the conditions which it is said caused the crossing to be peculiarly dangerous. or was responsible for their existence. The verdict of the jury, therefore, so far as it rests upon this alleged ground of negligence—if it does so rest—must be set aside.

The fact that the verdict in favor of the plaintiff has no substantial ground upon which to rest is, of course, dispositive

of the rule allowed to him; for if, under the proofs submitted, the verdict in his favor cannot stand, it necessarily follows that he has not sustained any legal injury by reason of the fact that the award of damages was less than he claims should have been made to him.

On the whole case, therefore, we consider that the plaintiff's rule to show cause must be discharged, and that the defendant's rule to show cause must be made absolute.